**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Faith Copp**</u>

    **v.**                                  Case No. 05-cv-214-PB
                                               **Opinion No. 2006 DNH 076**

<u>**Freudenberg-NOK**</u>
<u>**General Partnership and**</u>
<u>**Freudenberg and Company**</u>


<u>**MEMORANDUM AND ORDER**</u>

This suit arises from injuries that Faith Copp sustained while employed by FNGP Manufacturing General Partnership ("FNGP"). Defendant Freudenberg & Co. Kommanditgesellschaft ("Freudenberg & Co.") moves to dismiss the claims against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). I grant Freudenberg & Co.'s motion for the reasons that follow.


**I.   <u>BACKGROUND</u>**

On May 20, 2002, Copp's hand was caught in a 110-ton press that she was operating at FNGP's Northfield, New Hampshire manufacturing plant. Compl. ¶ 1. She claims that Freudenberg &

Co. is liable for her injuries because it was independently

responsible for workplace safety at the Northfield plant.[1]  Id.

## A.  **Corporate structure**

Freudenberg & Co. is a German limited partnership with its

principal place of business in Weinheim, Germany.  Decl. of Dr.

Dirk Mahler ("Mahler Decl.") ¶ 1.  It acts as a holding company

for numerous business entities that operate worldwide in the

manufacturing and textile industries.  Id. ¶ 5.  This family of

companies is collectively referred to as the "Freudenberg Group."

See Pl. Ex. 6.  Freudenberg & Co.'s Management Board performs

general oversight of the companies within the Freudenberg Group.

Id. at 1; Mahler Decl. ¶¶ 6-7.  Neither Freudenberg & Co. nor its

Management Board are involved in the day-to-day operations of the

subsidiary companies.  Mahler Decl. ¶ 8.

Two of Freudenberg & Co.'s subsidiary corporations,

Freudenberg Gesellschaft fur Industriebeteili gungen GmbH

(Germany) and Intpacor, Corp. (Delaware), are partners in

Freudenberg North America Limited Partnership ("Freudenberg

---

[1] Copp also sued Freudenberg-NOK General Partnership, which
I found to be immune from liability under New Hampshire's
Workers' Compensation statute, N.H. Rev. Stat. Ann. § 281-A:8.
See Order dated December 7, 2005 (Doc. No. 22).

NALP").  Id. ¶ 14.  Freudenberg NALP is a general partner in the

Freudenberg-NOK General Partnership ("Freudenberg-NOK"),[2] which

in turn is a general partner in FNGP (Copp's employer).[3]  Id. ¶¶

9-10.  Freudenberg NALP and Freudenberg-NOK are registered to do

business in New Hampshire.  Pl. Ex. 4-5.

Freudenberg & Co., Freudenberg-NOK and FNGP operate as

separate business entities, and accordingly maintain separate

records and accounts.  Mahler Decl. ¶¶ 19-20.  The companies also

have separate employees and management.  Id. ¶ 21.  Freudenberg-

NOK and FNGP make independent decisions concerning the day-to-day

operations of their respective facilities.  Id. ¶ 22.

## B.  **Freudenberg & Co.'s New Hampshire contacts**

Freudenberg & Co. does not have any offices or employees in

New Hampshire, does not own or lease any property in New

---

[2] The original partners in Freudenberg-NOK were NOK Inc.,
the wholly-owned subsidiary of a Japanese corporation, and IPC
Limited Partnership, the predecessor to Freudenberg NALP.  Joint
Venture Agreement at 2.  NOK Inc. now owns 25% of Freudenberg-NOK
and Freudenberg NALP owns the remaining 75%.  Mahler Decl. ¶ 15.
Freudenberg-NOK is managed by a Partners' Board, which consists
of three members nominated by Freudenberg NALP, two members
nominated by NOK Inc. and the Freudenberg-NOK president.  Id. ¶
17; General Partnership Agreement ¶ 9.1.

[3] In addition to Freudenberg-NOK's 99.99% interest in FNGP,
FNGP Holdings, Inc. has a .01% interest.  Mahler Decl. ¶ 9.

Hampshire, and does not conduct any direct business in New
Hampshire.  Mahler Decl. ¶¶ 3-4.  Copp nevertheless presents the
following evidence to demonstrate that Freudenberg & Co. has
direct contacts with New Hampshire as the parent company of the
Freudenberg Group.  Mem. in Supp. of Pl.'s Obj. at 4-7.

In June 1999, Freudenberg & Co.'s Management Board published
a document entitled "Guiding Principles," which discusses the
company's business philosophy.  Mahler Decl. ¶¶ 24-25.  In a
section entitled "Responsibility," the document states: "We take
all possible care to ensure the safety of the workplace and of
our products."  Id. Ex. A at 2.  The Guiding Principles are
printed in the Freudenberg-NOK employee manual, which Copp
received when she began her employment at the plant.  See Pl.'s
Ex. 7, at 3.

In July 2000, Freudenberg & Co.'s Management Board entered
into an agreement with the International Federation of Chemical,
Energy, Mine and General Workers Union ("ICEM") and the German
trade union Industregewerkschaft Bergbau, Chemie, Energie
("IGBCE").  Mahler Decl. Ex. B.  The agreement provides that the
"Freudenberg Group and its family shareholders . . . . take all

possible care to ensure the safety of the workplace and of their
products." Id. Ex. B. at 3.

In the summer of 2002, several high-ranking managers
representing companies affiliated with Freudenberg & Co. launched
the "We All Take Care" initiative to raise awareness about
workplace safety issues. Id. ¶¶ 32-34. As part of this
initiative, the Freudenberg & Co. Management Board set a goal to
"cut the number of notifiable accidents per thousand employees to
less than ten within two years." Pl. Ex. 10, at 4. An article
in the January 2005 issue of Freudenberg Magazine, which reported
on the success of the initiative, included accident statistics
for the Seals and Vibration Control Technology Business Group and
specifically Freudenberg-NOK. Id. at 5.

When Copp was injured in 2002, the accident was investigated
by David Lawson, Director of Corporate Health, Safety &
Environment at Freudenberg-NOK, and Dr. Volker Siekermann, head
of occupational safety at Freudenberg & Co. Aff. of David Lawson
("Lawson Aff.") ¶¶ 1-2; Dep. of Robert Evans ("Evans Dep.") at
29, 34. Siekermann contacted Lawson and Sherry Gray, manager of
the Northfield plant, by telephone from Germany. Lawson Aff. ¶

3.  He did not visit any location in New Hampshire in connection

with his investigation.  Id. ¶ 4.


## II.   <u>STANDARD OF REVIEW</u>

When a defendant contests personal jurisdiction under Rule

12(b)(2), the plaintiff bears the burden of showing that a basis

for asserting jurisdiction exists.  <u>Mass. Sch. of Law at Andover,</u>

<u>Inc. v. Am. Bar Ass'n.</u>, 142 F.3d 26, 34 (1st Cir. 1998).  Because

I have not held an evidentiary hearing, Copp need only make a

prima facie showing that the court has personal jurisdiction over

Freudenberg & Co.  <u>See</u> <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1386

n.1 (1st Cir. 1995).

To make a prima facie showing of jurisdiction, Copp may not

rest upon the pleadings.  Rather, she must "adduce evidence of

specific facts" that support her jurisdictional claim.  <u>See</u>

<u>Foster-Miller, Inc. v. Babcock & Wilcox Can.</u>, 46 F.3d 138, 145

(1st Cir. 1995).  I take the facts offered by Copp as true and

construe them in the light most favorable to her claim.  <u>See</u>

<u>Mass. Sch. of Law</u>, 142 F.3d at 34.  I do not act as a fact-

finder; instead, I determine "whether the facts duly proffered,

[when] fully credited, support the exercise of personal

jurisdiction."  Rodriguez v. Fullerton Tires Corp., 115 F.3d 81,

84 (1st Cir. 1997).  While the prima facie standard is liberal, I

need not "credit conclusory allegations or draw farfetched

inferences."  Mass. Sch. of Law, 142 F.3d at 34 (quotation

omitted).  I also consider facts offered by the defendant, but

only to the extent that they are uncontradicted.  See id.

### III.  **ANALYSIS**

When assessing personal jurisdiction over a non-resident

defendant in a diversity of citizenship case, the federal court

"'is the functional equivalent of a state court sitting in the

forum state.'"  Sawtelle, 70 F.3d at 1387 (quoting Ticketmaster-

New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).

Because New Hampshire's long-arm statute, N.H. Rev. Stat. Ann. §

293-A:15.10, authorizes jurisdiction to the full extent permitted

by the federal Constitution, the sole inquiry is "whether the

exercise of personal jurisdiction comports with federal

constitutional standards."  Id. at 1388.

The Due Process Clause precludes a court from asserting

jurisdiction over a defendant unless "the defendant's conduct and

connection with the forum State are such that [it] should

reasonably anticipate being haled into court there." <u>World-Wide
Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).  The
"constitutional touchstone" for personal jurisdiction is "whether
the defendant purposefully established 'minimum contacts' in the
forum State."  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474
(1985) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316
(1945)).  The inquiry into "minimum contacts" is necessarily
fact-specific, "involving an individualized assessment and
factual analysis of the precise mix of contacts that characterize
each case."  <u>Pritzker v. Yari</u>, 42 F.3d 53, 60 (1st Cir. 1994).  A
defendant cannot be subjected to a forum state's jurisdiction
based solely on "random," "fortuitous," or "attenuated" contacts.
<u>Burger King</u>, 471 U.S. at 475 (quotations omitted).  Rather, "'it
is essential in each case that there be some act by which the
defendant purposefully avails itself of the privilege of
conducting activities within the forum State, thus invoking the
benefits and protections of its laws.'"  <u>Id.</u> (quoting <u>Hanson v.
Denckla</u>, 357 U.S. 235, 253 (1958)).

    A court may assert authority over a defendant by means of
either general or specific jurisdiction.  <u>Mass. Sch. of Law</u>, 142
F.3d at 34.  A defendant who has engaged in continuous and

-8-

systematic activity in a forum is subject to general jurisdiction
in that forum with respect to all causes of action, even those
unrelated to the defendant's forum-based activities.  Phillips
Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288
(1st Cir. 1999).  A court may exercise specific jurisdiction, by
contrast, only when the cause of action arises from, or relates
to, the defendant's contacts with the forum.  Id.  "The standard
for evaluating whether . . . contacts satisfy the constitutional
general jurisdiction test 'is considerably more stringent' than
that applied to specific jurisdiction questions."  Noonan v.
Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) (quoting Glater v.
Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)).  "In
addition, courts must exercise even greater care before
exercising personal jurisdiction over foreign nationals."  Id.

**A.   <u>General jurisdiction</u>**

Two criteria must be met to establish general jurisdiction:
(1) "'continuous and systematic general business contacts'" must
exist between the defendant and the forum; and (2) the exercise
of jurisdiction must be reasonable as demonstrated by certain
"gestalt factors."  United States v. Swiss Am. Bank, Ltd., 274
F.3d 610, 619 (1st Cir. 2001) (quoting Helicopteros Nacionales de

Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)).

Copp argues that FNGP's contacts with New Hampshire should be imputed to Freudenberg & Co. as the parent company of the Freudenberg Group.  In order to attribute a subsidiary's contacts to its parent corporation, the plaintiff must demonstrate "a 'plus' factor – something beyond the subsidiary's mere presence within the bosom of the corporate family."  Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465-66 (1st Cir. 1990).  The "presumption of corporate separateness" persists unless Copp can demonstrate that Freudenberg & Co.'s control over its subsidiaries is "greater than that normally associated with common ownership and directorship."  Id. at 466 (quotation omitted).  It is undisputed that Freudenberg & Co. does not control the daily operations of Freudenberg-NOK and FNGP, see Mahler Decl. ¶ 22, and Copp has not presented any evidence that Freudenberg & Co. exercised "actual control" over either company. See Donatelli, 893 F.2d at 466.  Nor has Copp demonstrated that Freudenberg & Co. utilized its subsidiaries "in such a way that an agency relationship between the two corporations can be perceived."  Id.  Accordingly, I find that Freudenberg & Co. does

not have sufficient contacts with New Hampshire to warrant the
exercise of general jurisdiction.[4]

## B.  <u>Specific jurisdiction</u>

Copp argues that Freudenberg & Co.'s "direct contacts with
the state" through its workplace safety initiatives are
sufficient to establish specific jurisdiction in New Hampshire.
Mem. in Supp. of Pl.'s Obj. at 4.  Freudenberg & Co. disagrees
and argues that its policy statements were merely "aspirational"
and were not binding on Freudenberg-NOK absent a decision by the
Partners' Board to adopt them.  Def.'s Reply ¶¶ 10-12.

The First Circuit divides the constitutional analysis of
specific jurisdiction into three categories: "relatedness,

---

[4] Copp also argues that contacts should be imputed to
Freudenberg & Co. as a partner or co-venturer in Freudenberg-NOK.
This claim is not supported by the evidence, which shows that
Freudenberg & Co. is not a partner in the general partnership but
rather is the parent of two subsidiary corporations that are
partners in a chain of partnerships that ultimately leads to
FNGP.  Furthermore, Copp successfully argued in a previous motion
that "Freudenberg and Company is not a partner of Freudenberg
NOK" in order to avoid dismissal under New Hampshire's Workers'
Compensation statute.  Mot. for Reconsideration (Doc. No. 23)
¶ 4.  Accordingly, Copp is estopped from taking the opposite
position now as a basis for establishing personal jurisdiction
over Freudenberg & Co.  <u>See</u> <u>Alternative Sys. Concepts, Inc. v.
Synopsys, Inc.</u>, 374 F.3d 23, 33 (1st Cir. 2004).

purposeful availment, and reasonableness."  <u>Daynard v. Ness,</u>

<u>Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 60 (1st

Cir. 2002).  I consider each in turn.

As to the first requirement, "[t]he evidence produced to

support specific jurisdiction must show that the cause of action

either arises directly out of, or is related to, the defendant's

forum-based contacts."  <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50,

60-61 (1st Cir. 2005).  "[T]he defendant's in-state conduct must

form an important, or at least material, element of proof in the

plaintiff's case."  <u>Id.</u> at 61 (quotation and brackets omitted).

New Hampshire recognizes "the right of an injured employee to

seek recovery from the employer's parent corporation based on the

breach of an independent duty to maintain a safe workplace."

<u>Leeman v. Boylan</u>, 134 N.H. 230, 235 (1991).  To the extent that

Freudenberg & Co., "by some affirmative act, independently

undertook the duty to maintain safe working conditions" at the

Northfield plant, its actions are related to Copp's cause of

action.[5]  <u>See</u> <u>id.</u> at 236.

─────────────────

[5] Copp also relies upon Siekermann's investigation of her
accident as an additional contact with New Hampshire that is
"related to" her cause of action.  Contacts that give rise to
specific jurisdiction are generally "limited to those before and

-12-

Even assuming that Freudenberg & Co.'s New Hampshire
contacts meet the relatedness requirement, Copp also must
demonstrate that they "represent a purposeful availment of the
privilege of conducting activities in the forum state."  Daynard,
290 F.3d at 60.  "This prong is only satisfied when the defendant
purposefully and voluntarily directs [its] activities toward the
forum so that [it] should expect, by virtue of the benefit [it]
receives, to be subject to the court's jurisdiction based on
these contacts."  Swiss Am. Bank, 274 F.3d at 624.

Copp primarily relies upon the same evidence to prove
purposeful availment as she relied upon to support her general
jurisdiction claim.[6]  As discussed above, the mere fact that

_____

surrounding the accrual of the cause of action" to ensure that
the defendant has "fair warning" that its conduct will subject it
to suit in the forum.  Harlow, 432 F.3d at 61-62.  Freudenberg &
Co. could not have foreseen that it would be haled into court
here as a result of Siekermann's actions.  See id. at 62.

[6] The only other evidence that Freudenberg & Co. directed
its activities at New Hampshire is Siekermann's investigation of
Copp's accident.  This limited contact with New Hampshire, which
consisted of two telephone calls, does not demonstrate that
Freudenberg & Co. purposefully availed itself of the benefits and
protections of the state's laws.  See Harlow, 432 F.3d at 62.
Moreover, subjecting Freudenberg & Co. to specific personal
jurisdiction based upon this isolated contact would discourage
parent corporations from inquiring into accidents in order to
improve workplace safety in the future.

Freudenberg & Co., through two of its subsidiary corporations,

has an indirect ownership interest in a New Hampshire company is

not sufficient to satisfy the Due Process Clause.  See Andresen

v. Diorio, 349 F.3d 8, 12 (1st Cir. 2003); Donatelli, 893 F.2d at

465.  I thus conclude that this court does not have specific

personal jurisdiction over Freudenberg & Co.[7]

## IV.   CONCLUSION

For the foregoing reasons, I grant Freudenberg & Co.'s

motion to dismiss for lack of personal jurisdiction (Document No.

11).

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

July 3, 2006

cc:  Matthew J. Lahey, Esq.
     Andrew D. Dunn, Esq.

---

[7] Having determined that Freudenberg & Co.'s New Hampshire
contacts are insufficient to authorize personal jurisdiction, I
need not address whether asserting jurisdiction would be
reasonable under the Gestalt factors.  See Noonan, 135 F.3d at
94.